UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                    CRIMINAL ACTION

VERSUS                                       NO. 09-166

RODNEY BOLTON                                SECTION "B"

## ORDER AND REASONS

Before the Court are defendant Rodney Bolton's motion for reduction in sentence under 18 U.S.C. § 3582(c)(1)(A) (Rec. Doc. 497) and the government's opposition (Rec. Doc. 512). For the following reasons,

**IT IS ORDERED** that defendant's motion for reduction in sentence under 18 U.S.C. § 3582(c)(1)(A) is **DENIED**.

## I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On August 26, 2010, at the conclusion of a jury trial, Bolton and two co-defendants were found guilty on all counts of a second superseding indictment. *See* Rec. Doc. 274. Bolton himself was convicted of one count in violation of the Federal Controlled Substance Act for conspiring to possess with intent to distribute five kilograms or more of cocaine hydrochloride and one kilogram or more of heroin ("Count 1"), pursuant to 21 U.S.C. §§ 841(a), 846, and 841(b)(1)(A), and of three counts of illegal use of a communication facility for using a telephone to facilitate the conspiracy to possess with intent to distribute the controlled substances, pursuant to 21 U.S.C. § 843(b). Rec. Doc. 123. The convictions carried with them a total offense level of 34, which coupled with Bolton's criminal history category of VI for a Guidelines range of 262 to 327 months. Rec. Doc. 512-1 at 31–32 ¶166 (final pre-sentence report). However, in the lead up to trial, the government also established two prior, state court drug felonies of Bolton: a 1994 possession of heroin conviction, for which he was sentenced to five years imprisonment, and a 1995 possession

1

of heroin conviction, for which he was sentenced to 80 months imprisonment. Rec. Doc. 262. These prior convictions served to enhance Bolton's statutory sentencing exposure to mandatory life imprisonment. *See* Rec. Doc. 512-1 at 31 ¶165. Accordingly, Bolton was sentenced to a term of life imprisonment as to Count 1 and consecutive terms of 48 months for each of the remaining counts. Rec. Doc. 314 at 2. At sentencing, Judge Engelhardt explained the significance of the prior drug convictions:

> [I]f you had not been convicted of any prior drug felony convictions, a term of imprisonment of at least 10 years but not more than life would apply. And, if you had been convicted of only one prior felony drug conviction, a term of imprisonment of at least 20 years but not more than life would apply.

Rec. Doc. 345 at 27–28 (sentencing transcript). While recognizing that a life sentence for Count 1 was statutorily permissible without any previous convictions, and assessing the 18 U.S.C. § 3553(a) sentencing factors, Judge Engelhardt concluded he would render a life imprisonment sentence regardless of the enhancements: "The Court would also impose that sentence in the alternative under [18 U.S.C.] Section 3553 but for the two prior felony convictions." *Id.* at 34. The Fifth Circuit Court of Appeals affirmed Bolton's conviction. Rec. Doc. 358.

Bolton now moves for a sentence reduction related to changes in the law as to his sentencing enhancement in Count 1. Rec. Doc. 497.

## II. LAW AND ANALYSIS
### A. Standard of Review

A defendant may move the court for compassionate release after either fully exhausting his administrative rights or upon the lapse of thirty days from a request for relief to the warden, whichever is earlier. *See* 18 U.S.C. § 3582(c)(1)(A). Once the exhaustion requirement has been met, the court may reduce a defendant's term of imprisonment if it finds that extraordinary and compelling reasons warrant such a reduction and, thereafter, a reduction would be in conformity with the sentencing factors in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1); *Ward v. United*

*States*, 11 F.4th 354, 359–60 (5th Cir. 2021). The analysis of extraordinary and compelling reasons is informed by—and must be consistent with—applicable policy statements of the Sentencing Commission. *See* 18 U.S.C. § 3582(c)(1)(A). The defendant has the burden of proving he is entitled to a reduction. *See Ward*, 11 F.4th at 361 (citation omitted).

### B. Exhaustion of Administrative Remedies

In the instant case, Bolton avers he has exhausted administrative remedies by requesting reduction in sentence from his warden more than thirty days from his motion. Rec. Doc. 497 at 4–5 (citing Rec. Doc. 497-1 (letter to warden dated Sept. 1, 2023)). The government agrees, observing the same argument in Bolton's letter to the warden and in the instant motion. Rec. Doc. 512 at 5.

### C. Extraordinary and Compelling Reasons

Even with his exhaustion of administrative remedies, Bolton can receive relief only if he proves the existence of an extraordinary and compelling reason. Bolton insists his unusually long sentence presents compassionate release grounds pursuant to a change in predicate offenses that can be used as sentencing enhancements for Count 1. *See* Rec. Doc. 497 at 5 ("The fact that Bolton is subject to a statutory mandatory life term but would not be had he been sentenced after the FIRST STEP ACT is sufficient to meet the definition of 'extraordinary and compelling reasons' under the for a compassionate release."). The government concedes that under the First Step Act Bolton would no longer face a mandatory life imprisonment sentence as to Count 1: "[I]f he were sentenced under today's law, Bolton would not be subject to the mandatory term of life imprisonment as to Count One, but instead a minimum term of imprisonment of ten years and a maximum of life." Rec. Doc. 512 at 26.

Rather than primarily debate the possible gross disparity the First Step Act produces for Bolton's sentence, the government takes aim at Amendment 814 itself, which altered the

3

applicable U.S. Sentencing Guidelines policy statement for 18 U.S.C. § 3582 to include an "unusually long sentence" as an extraordinary and compelling ground for sentence reduction: "Although Congress delegated broad authority to the Commission, § 1B1.13(b)(6) is contrary to the statute's text, structure, and purpose, and thus is invalid." *Id.* at 10 (discussing U.S.S.G. § 1B1.13(b)(6)).

Section 3582(c)(1)(A) provides two categories of defendants eligible for compassionate release: those (1) showing extraordinary and compelling reasons under 18 U.S.C. § 3582(c)(1)(A)(i) or (2) being at least seventy years old and having served thirty years in prison under 18 U.S.C. § 3582(c)(1)(A)(ii). As Bolton is currently fifty-nine years old, he does not qualify based on the latter provision. *See Find an inmate*, FED. BUREAU OF PRISONS, https://www.bop.gov/inmateloc (last visited May 1, 2024).

The § 3582(c)(1)(A)(i) analysis of extraordinary and compelling reasons is informed by the U.S. Sentencing Guidelines § 1B1.13. *See* U.S.S.G. § 1B1.13 (Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement)). Amended in 2023, § 1B1.13 now contains a non-exclusive list of six extraordinary and compelling reasons within the policy text itself, offering greater clarity to courts. *See* U.S. Sent'g Guidelines Manual Supplement to App. C (U.S. Sent'g Comm'n 2023) at 200–210 (Am. 814). Bolton's compassionate release application implicates one of the newly promulgated extraordinary and compelling bases: unusually long sentence. *See* U.S.S.G. § 1B1.13(b)(6).

The amendment to § 1B1.13 came after years of uncertainty over the scope of "extraordinary and compelling reasons," an inquiry the Fifth Circuit has described as "notoriously thorny." *United States v. Shkambi*, 993 F.3d 388, 391 (5th Cir. 2021). A live issue since the abolition of federal parole and the 1984 enactment of the Sentencing Reform Act—with its

4

exceptional compassionate release mechanism—consideration of what was properly "extraordinary and compelling" increased following the 2018 First Step Act, which provided inmates, for the first time, the ability to move for § 3582 sentence reduction. *Id*. at 390–91. In its lengthy discussion on the history and purpose of § 3582, the Fifth Circuit in *Shkambi* explained the root of the extraordinary-and-compelling thorn:

> Congress never defined or provided examples of "extraordinary and compelling reasons" that might warrant a reduction. Instead, it delegated that authority to the Sentencing Commission. The Sentencing Reform Act instructed the Commission to "promulgat[e] general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A)" that "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."

*Id.* (quoting 28 U.S.C. § 994(t)). Rather than inserting explanatory notes into the policy itself, the Commission chose, in 2006, to provide four exceptional and compelling categories through § 1B1.13 commentary: (A) medical conditions of the defendant; (B) age of the defendant; (C) family circumstances; and (D) other reasons. *See* U.S.S.G. § 1B1.13 (effective Nov. 1, 2006).

Four years after the passage of the First Step Act, the Commission revised § 1B1.13, lifting the commentary categories into the policy text itself, making the reasons applicable to inmate-filed motions, and as pertinent here, adding an unusually long sentence as an extraordinary and compelling reason. *See* U.S. Sent'g Comm'n 2023 at 204–05 (reason for amendment) ("Because the Commission lost its quorum in early 2019 and did not regain it until 2022, it was unable to amend § 1B1.13 during the more than four-year period since defendants were first permitted to file such motions.").

The Commission's inclusion of an unusually long sentence as grounds was a response to "a circuit split concerning when, if ever, non-retroactive changes in law may be considered as extraordinary and compelling reasons within the meaning of section 3582(c)(1)(A)." *Id.* at 208.

Working in tandem with subsection (c), § 1B1.13(b)(6) provides for sentence reduction from nonretroactive changes in law, but through "a tailored approach that narrowly limits that principle in multiple ways." *Id*. The text of § 1B1.13(b)(6) itself constricts the application:

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6). Thus, an unusually long sentence presents an extraordinary and compelling reason only when all of the following exist: (1) the defendant's individualized circumstances support it; (2) the defendant has served at least 10 years imprisonment under the sentence in question; and (3) a gross disparity between the sentence imposed and the sentence under the current law is likely. Further narrowing the scope, nonretroactive amendments to the Sentencing Guidelines do not establish extraordinary and compelling reasons by themselves, but only nonretroactive changes in law by Congress do.

To the government, however, subsection (b)(6) is invalid because the Commission overstepped its statutory bounds. "Congress directed the Commission to 'describe what should be considered extraordinary and compelling reasons,' but the Commission's authority necessarily is limited by Congress's clear directive that any such reasons be both extraordinary and compelling" Rec. Doc. 512 at 10 (quoting 28 U.S.C. § 994(t)). And, according to the government, "[n]onretroactive changes in sentencing law are neither." *Id*.

Despite the assuredness of its argument, the government's textual analysis is debatable, if not plainly dubious. The Commission received broad statutory authority to craft the Guidelines, generally, and to define extraordinary and compelling reasons, specifically. Congress delegated to

6

the Commission extensive oversight of sentencing-related policy work, including sentencing ranges, applicable fines, and periods of supervised release. *See* 28 U.S.C. § 994(a) ("The Commission, . . . pursuant to its rules and regulations and consistent with all pertinent provisions of any Federal statute shall promulgate and distribute to all courts of the United States and to the United States Probation System guidelines . . . for use of a sentencing court in determining the sentence to be imposed in a criminal case[.]"). The delegation offers "broad authority to the Commission to review and rationalize the federal sentencing process." U.S.S.G. Ch. 1, Pt. A, Subpt. 1(2); *see also Mistretta v. United States*, 488 U.S. 361, 374 (1989) ("In light of our approval of these broad delegations, we harbor no doubt that Congress' delegation of authority to the Sentencing Commission is sufficiently specific and detailed to meet constitutional requirements.").

Further, the Commission's task was not once in time, but it "periodically shall review and revise, in consideration of comments and data coming to its attention, the guidelines promulgated pursuant to the provisions of this section." 28 U.S.C. § 994(o). Although the Supreme Court has clarified that the produced Guidelines are advisory, district courts "must consult those Guidelines and take them into account when sentencing." *United States v. Booker*, 543 U.S. 220, 264 (2005); *see also* 18 U.S.C. § 3553(a)(4)(A) (including applicable guideline sentencing range as a factor the court "shall consider"); *Rita v. United States*, 551 U.S. 338, 354–56 (2007) (sentences within the guideline range possess "a presumption of reasonableness"); *Gall v. United States*, 552 U.S. 38, 49 (2007) ("As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark."). This reliance on the Commission's work is understandable because "[d]eveloping proportionate penalties for hundreds of different crimes by a virtually limitless array of offenders is precisely the sort of intricate, labor-intensive task for which delegation to an expert body is especially appropriate." *Mistretta*, 488 U.S. at 374.

Where the Commission lacks explicit delegation on a sentencing-related issue, an apparent congressional interpretation via statute will control. *See Neal v. United States*, 516 U.S. 284, 289–90 (1996). In more clearly delegated circumstances, however, the Commission's policy work "must bow to the specific directives of Congress" and "must give way" only if it is "at odds with [the delegating statute's] plain language." *United States v. LaBonte*, 520 U.S. 751, 757 (1997). Moreover, where "Congress entrusts to [an agency], rather than to the courts, the primary responsibility for interpretating the statutory terms[,] . . . [a] reviewing court is not free to set aside [that interpretation] simply because it would have interpreted the statute in a different manner." *Batterton v. Francis*, 432 U.S. 416, 425 (1977).

The Commission's discretion, therefore, is broadest where Congress has specifically tasked it with an interpretative duty, as is the case here:

> The Commission . . . shall promulgate and distribute to all courts of the United States and to the United States Probation System . . . (2) general policy statements regarding application of the guidelines or any other aspect of sentencing or sentence implementation that in the view of the Commission would further the purposes set forth in section 3553(a)(2) of title 18, United States Code, including the appropriate use of— . . . (C) the sentence modification provisions set forth in sections 3563(c), 3564, 3573, and 3582(c) of title 18.

28 U.S.C. § 994(a)(2)(C). Section 994 becomes even more specific in discussing extraordinary and compelling reasons, providing that the Commission "shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." *Id.* § 994(t).

Nonetheless, the government argues the Commission overstepped its delegated authority by making an unusually long sentence an extraordinary and compelling reason for sentence reduction. *See* Rec. Doc. 512 at 10–11. The government contends the inclusion of an unusually long sentence would not be a reasonable interpretation by the Commission and would create "an

8

impermissible reading of the statute—i.e., a reading that exceeds the gap left by Congress." *Id.* at 11.  Most starkly, the government insists "[n]o reasonable interpretation of that phrase's text . . . can encompass nonretroactive or intervening changes in law." *Id.* at 11–12.

The government overstates the reasonableness of its position. Aside from the Commission itself coming to the interpretation that unusually long sentences may fall under the extraordinary-and-compelling umbrella, it did so to resolve differing determinations on the issue: "Subsections (b)(6) and (c) operate together to respond to a circuit split concerning when, if ever, non-retroactive changes in law may be considered as extraordinary and compelling reasons within the meaning of section 3582(c)(1)(A)." U.S. Sent'g Comm'n 2023 at 208 (reason for amendment) (citing, as supportive of considering nonretroactive changes in law for sentence reduction, *United States v. Ruvalcaba*, 26 F.4th 14, 16, 26–28 (1st Cir. 2022); *United States v. McCoy*, 981 F.3d 271, 286–88 (4th Cir. 2020); *United States v. Chen*, 48 F.4th 1092, 1098 (9th Cir. 2022); *United States v. McGee*, 992 F.3d 1035, 1047–48 (10th Cir. 2021)). The Supreme Court has held that the Commission, and not the courts, usually should resolve circuit splits over Guidelines interpretations. *Braxton v. United States*, 500 U.S. 344, 348 (1991) (quoting 28 U.S.C. § 994(o)) (determining the Commission has a general duty to "periodically . . . review and revise the Guidelines," and a specific power to decide explicitly delegated issues). In deciding to resolve the circuit split over nonretroactive changes in law, the Commission noted four successful oppositions by the Department of Justice to grants of certiorari on the issue. U.S. Sent'g Comm'n 2023 at 208 (reason for amendment) (first citing *Jarvis v. United States*, No. 21-568, 2021 WL 5864543, at *9 (U.S. Dec. 8, 2021) ("Given that a decision by this Court would not preclude the Commission from issuing a new policy statement, applicable to prisoner-filed motions, that forecloses reliance on prospective amendments to the law in finding 'extraordinary and compelling reasons,' no sound

9

reason exists for this Court's intervention at this time."); then citing Memorandum For the United States in Opposition to Grant of Certiorari, *Watford v. United States*, No. 21-551, 2021 WL 5983234, at *1–2 (U.S. Dec. 15, 2021) (same); then citing Memorandum For the United States in Opposition to Grant of Certiorari, *Williams v. United States*, No. 21-767, 2022 WL 217947, at *2 (U.S. Jan. 24, 2022) (same); then citing Memorandum For the United States in Opposition to Grant of Certiorari, *Thacker v. United States*, No. 21-877, 2022 WL 467984, at *2 (U.S. Feb. 14, 2022) (same)).

Further, Fifth Circuit opinions anticipate future clarity by the Commission. As previously discussed, in *United States v. Shkambi* the Fifth Circuit provided its most thorough treatment of the history of 18 U.S.C. § 3582(c) sentence reductions, particularly in light of the First Step Act amendments. *United States v. Shkambi*, 993 F.3d 388, 390–92 (5th Cir. 2021). While concluding that policy and commentary statements directed at motions by the Director of Bureau of Prisons did not bind a court considering prisoner-filed motions, the *Shkambi* court looked for guidance from the Commission: "[A]ll of this is made more complicated by the fact that the Commission—which took 22 years to adopt its first policy statement under § 3582(c)(1)(A)(i)—has not yet adopted a new statement to implement the [First Step Act]." *Id.* at 392 (noting, among other requirements, the prisoner "still must show 'extraordinary reasons'"). In reaching similar conclusions, other Fifth Circuit opinions also observed the absence of an updated policy statement from the Commission. *See, e.g., United States v. McFadden*, No. 20-40801, 2022 WL 715489, at *2 (5th Cir. Mar. 9, 2022) (citation omitted) ("The Sentencing Commission has not adopted a new policy statement in response to the First Step Act."); *United States v. Sauseda*, No. 21-50210, 2022 WL 989371, at *2 n.1 (5th Cir. Apr. 1, 2022) (citations and quotations omitted) ("The Sentencing Commission itself has noted that the absence of an applicable policy statement has led to

10

considerable variability in how courts decide these motions. Yet no guidance appears likely to be forthcoming as the Commission currently lacks a quorum of voting members."); *United States v. Jackson*, 27 F.4th 1088, 1090 (5th Cir. 2022) ("Notably, Section 3582 does not define 'extraordinary and compelling reasons.' Congress left that task to the Sentencing Commission[.]"). Clearly, the Fifth Circuit awaited directives from the Commission on § 3582(c) sentencing reduction.

Notwithstanding the Commission's long-awaited policy update, the government contends the Fifth Circuit has already rejected the argument that nonretroactive changes to law can serve as an extraordinary and compelling reason. Rec. Doc. 512 at 13. Arguing that the precedent binds and, "in any event, is correct," the government cites the Fifth Circuit's unpublished, per curiam opinion in *United States v. McMaryion*. *Id.* (discussing *United States v. McMaryion*, No. 21-50450, 2023 WL 4118015 (5th Cir. June 22, 2023)). According to the government, because the Fifth Circuit "directly construed, as a statutory matter, the phrase 'extraordinary and compelling' as used in Section 3582(c)(1)(A)," a later Sentencing Commission directive to the contrary "does not have the authority to override that authoritative construction of the statute's clear meaning." *Id.* (quotation and citation omitted). In *McMaryion*, the Fifth Circuit concluded "a prisoner may not leverage non-retroactive changes in criminal law to support a compassionate release motion, because such changes are neither extraordinary nor compelling." *McMaryion*, 2023 WL 4118015, at *2 (first citing *United States v. Jenkins*, 50 F.4th 1185, 1198–1200 (D.C. Cir. 2022); then citing *United States v. McCall*, 56 F.4th 1048, 1065–66 (6th Cir. 2022) (en banc)). To arrive at this conclusion, the *McMaryion* court refused to "usurp the legislative prerogative" and read 18 U.S.C. § 3582(c) "to create retroactivity that Congress did not." *Id.*

11

The *McMaryion* court, however, made its determination before the guidance provided by Amendment 814. In fact, subsequent to the *McMaryion* decision but prior to the amendment's enactment, the Fifth Circuit again addressed the issue. *See United States v. Elam*, No. 22-40373, 2023 WL 6518115 (5th Cir. Oct. 5, 2023). The *Elam* court contextualized the strength of the previous *McMaryion* opinion: "While our circuit has not authoritatively weighed in on the issue, a recent unpublished opinion concluded that such a non-retroactive change cannot warrant a reduced sentence under § 3582(c)(1)(A)(i)." *Id.* at *2 (citing *McMaryion*, 2023 WL 4118015, at *2). Immediately, the *Elam* court continued, forecasting a change in circuit decision making due to Amendment 814:

> We note that a forthcoming policy statement from the Sentencing Commission would apply to sentence reduction motions by *both* the Bureau of Prisons and prisoners themselves. That policy statement indicates that district courts "may" consider changes in law as part of the "extraordinary and compelling" reasons analysis, but "only" after "full[y] consider[ing]" the prisoner's "individualized circumstances."

*Id.* (emphasis in original) (citation omitted). The possible effect of the future policy statement is similarly presented in an even more recent Fifth Circuit opinion. *See United States v. Martinez*, No. 23-50418, 2024 WL 658952, at *1 (5th Cir. Feb. 16, 2024) (citation omitted, alterations in original) ("We note that after the denial of Martinez's motion for compassionate release, the Sentencing Commission amended the policy statement to provide that district courts 'may' consider changes in law as part of the 'extraordinary and compelling' reasons analysis, but 'only' after 'full[y] consider[ing]' the prisoner's 'individualized circumstances.'"). That policy statement is now in effect.

Other district courts have dealt with the issue before us, namely, how to treat circuit precedent that refused to consider nonretroactive changes in law as an extraordinary and compelling reason following the enactment of Amendment 814. The government directs the

12

Court's attention to four district courts that have found subsection (b)(6) invalid, while also citing two that have applied the new Guidelines provision as written. *See United States v. Crandall*, No. 89-21, 2024 WL 945328, at *8 (N.D. Iowa Mar. 5, 2024) ("The Commission's approach to compassionate release for unusually long sentences is unprincipled, inconsistent, and unreasonable."); *United States v. Johnson*, No. 09-685, 2024 WL 665179, at *2 (E.D. Pa. Feb. 16, 2024) ("Section 1B1.13(b)(6) may not serve as the basis for compassionate release"); *United States v. Black*, No. 05-74, 2024 WL 449940, at *12 (N.D. Ill. Feb. 6, 2024) ("As the Seventh Circuit has construed that statute, the amended U.S.S.G. § 1B1.13(b)(6) is not a reasonable reading of § 3582(c)(1)(A)."); *United States v. Carter*, 2024 WL 136777, at *6 (E.D. Pa. Jan. 12, 2024) ("[A]s things currently stand, this binding precedent instructs that a defendant's unusually long sentence is not an adequate basis for compassionate release."); *but see United States v. Ware*, No. 97-09, 2024 WL 1007427, at *7 (N.D. Ga. Mar. 6, 2024) ("Congress's delegation to the Sentencing Commission included ambiguous terms—i.e., extraordinary and compelling—and it reasonably interpreted these terms to include unusually long sentences which can be assessed in the light of nonretroactive changes in law."); *United States v. Brown*, No. 95-66, 2024 WL 409062, at *6 (S.D. Ohio Feb. 2, 2024) ("As a result [of § 1B1.13(b)(6)], this Court is no longer free to rely on the Sixth Circuit's conclusion that nonretroactive sentencing developments are irrelevant to our analysis."). Taking two of the initial rulings, we examine the Eastern District of Pennsylvania's decision in *Carter* and the Southern District of Illinois's decision in *Brown*.

In *United States v. Carter*, the Eastern District of Pennsylvania determined that a pre-amendment opinion from the Third Circuit Court of Appeals was "binding precedent [that] forecloses relief via Section 1B1.13(b)(6) of the Sentencing Commission's revised policy statement." *Carter*, 2024 WL 136777, at *5 (discussing *United States v. Andrews*, 12 F.4th 255

13

(3d Cir. 2021)). The *Carter* court's refusal to find the Third Circuit's reasoning abrogated by the Commission's later policy statement primarily relied on *Neal v. United States*: "That holding may not now be overridden by the Sentencing Commission, which 'does not have the authority to amend the statute [the court] construed' in a prior case." *Id.* at 6 (quoting *Neal v. United States*, 516 U.S. 284, 290 (1996)).

In concluding in the opposite manner, the Southern District of Ohio in *United States of America v. Rufus E. Brown* took aim at the *Carter* court's reading of *Neal*: "[T]he Court in *Neal* was weighing differing interpretations of a mandatory minimum statute for which Congress had not explicitly delegated interpretative authority to the Commission. Here, however, Congress *did* delegate authority to the Commission to interpret the meaning of the phrase 'extraordinary and compelling.'" *Rufus E. Brown*, 2024 WL 409062, at *5 (emphasis in original). In determining it was bound by the Commission's policy statement—and not an en banc decision from the Sixth Circuit Court of Appeals—the *Brown* court noted its circuit court ruled "without the benefit of the Commission's expert interpretation of the statutory phrase" and "explicitly left open the possibility that a provision such as § 1B1.13(b)(6) could abrogate its holding[.]" *Id.* at *4, *6 (discussing *United States v. McCall*, 56 F.4th 1048 (6th Cir. 2022) (en banc)).

The reasoning in *Brown* is persuasive. In concert with our previous discussion, the Commission's addition of subsections (b)(6) and (c) to U.S. Sentencing Guideline § 1B1.13 was in line with its explicit, congressionally delegated task to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). The inclusion of unusually long sentence as a basis for sentence reduction is narrowly limited to a small subset of applicants: those (1) whose individualized circumstances support it; (2) who have served at least 10 years imprisonment under

14

the sentence in question; and (3) who likely have a gross disparity between the sentence imposed and the sentence under the current law. As such, the reason is both extraordinary and compelling. Without the benefit of this guidance, the Fifth Circuit's *McMaryion* opinion offers limited guidance. Rather, as anticipated in *Elam* and *Martinez*, the Commission has crafted a policy statement consistent with the text of 28 U.S.C. § 3582(c). Put simply, the policy statement does not appear "at odds with [the delegating statute's] plain language" and, therefore, need not bow. *See United States v. LaBonte*, 520 U.S. 751, 757 (1997).

Further, where presented the opportunity, courts in the Eastern District of Louisiana have not jumped at the opportunity to stamp the Commission's work as invalid. In *United States v. Riley*, Chief Judge Brown reduced a compassionate release applicant's sentence to time-served. *United States v. Riley*, No. 11-235, 2023 WL 8600496 (E.D. La. Dec. 12, 2023) (Brown, C.J.). Serving concurrent 240-month and 48-month sentences for conspiracy to possess with intent to distribute controlled substances and using a communication facility in a drug trafficking crime, the defendant had a Guidelines range at sentencing of 108 to 135 months. *Id.* at *1. After denying a previous compassionate release application because of a lack of authority to make First Step Act changes retroactive, Chief Judge Brown changed course in light of § 1B1.13(b)(6): "Riley's sentence appears to be exactly the kind of 'unusually long sentence' as is envisioned by the amendment to the Sentencing Guidelines as a basis for compassionate relief." *Id.* at *6.

Two other Eastern District of Louisiana opinions considered § 1B1.13(b)(6), but ultimately concluded the extraordinary and compelling reason did not apply to the facts of the case. *See United States v. Elwood*, No. 92-469, 2024 WL 454976, at *5 (E.D. La. Feb. 6, 2024) (Africk, J.); *United States v. Samak*, No. 91-189, 2023 WL 7002808, at *4 (E.D. La. Oct. 24, 2023) (Morgan,

15

J.)[1]. Finally, in *United States v. Allen*, Judge Vance was presented a similar invalidity argument from the government but determined the question was unnecessary to resolve: "The Court need not reach these arguments, because the sentencing factors in 18 U.S.C. § 3553(a) weigh against compassionate release." *United States v. Allen*, No. 12-138, 2024 WL 640017, at *3 (E.D. La. Feb. 15, 2024) (Vance, J.) (first citing *United States v. Brown*, No. 15-28, 2020 WL 4024073, at *2 (S.D. Miss. July 16, 2020), *aff'd* 829 F. App'x 695 (5th Cir. 2020) (per curiam) (declining to consider whether defendant had shown "extraordinary and compelling reasons" because the Court could not conclude that defendant was not a danger to the community and the sentencing factors weighed against compassionate release); then citing *United States v. Chambliss*, 948 F.3d 691, 693–94 (5th Cir. 2020) (affirming district court's denial of compassionate release when the district court found "extraordinary and compelling reasons" but found that the sentencing factors weighed against release); then citing 18 U.S.C. § 3582(c)(1)(A) (permitting a court to reduce a defendant's term of imprisonment if he has shown "extraordinary and compelling reasons" only "after considering the sentencing factors in section 3553(a)").

We agree with Judge Vance's approach, refusing to make a more expansive ruling where unnecessary. *See generally Spector Motor Serv. v. McLaughlin*, 323 U.S. 101, 105 (1944) ("[W]e ought not to pass on questions of constitutionality . . . unless such adjudication is unavoidable."). Bolton's application fails independent of § 1B1.13(b)(6) considerations.

### D. 18 U.S.C. § 3553(a) Sentencing Factors

As the final step in the compassionate release evaluation, the § 3553(a) factors must independently support a sentencing reduction. *See* 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. §

---

[1] Judge Morgan makes reference to the new subsection, but also acknowledges that the amendment was not in effect at the time of the compassionate release application or her ruling. *See Samak*, 2023 WL 7002808, at *4 n.46 ("U.S. Sentencing Guidelines Manual § 1B1.13(b)(6) (U.S. Sentencing Comm'n 2023) (Amendment effective Nov. 1, 2023).").

16

1B1.13(a) ("[T]he court may reduce a term of imprisonment . . . after considering the factors set forth in 18 U.S.C. § 3553(a) . . . ."). As the Fifth Circuit has expressed it, the § 3553(a) factors offer "an alternative basis for denying relief." *United States v. McFadden*, No. 20-40801, 2022 WL 715489, at *3 (5th Cir. Mar. 9, 2022) (citing *United States v. Chambliss*, 948 F.3d 691, 693–94 (5th Cir. 2020)).

In maintaining "a sentence sufficient, but not greater than necessary," the Court evaluates Bolton's compassionate release motion through the stated factors:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

18 U.S.C. § 3553(a). The court's application of the § 3553(a) factors is discretionary. *See Ward v. United States*, 11 F.4th 354, 360 (5th Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)) ("[M]otions for compassionate release are inherently discretionary. By statute, a district court 'may' reduce an otherwise-eligible defendant's sentence 'after considering the factors set forth in section 3553(a) to the extent that they are applicable.'"); *Chambliss*, 948 F.3d at 693 (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)) ("[A] 'sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case.' Thus, we give deference to the district court's decision and note that reversal is not justified where 'the appellate court might reasonably have concluded that a different sentence was appropriate.'"). While noting that the Supreme Court has

described, "for argument's sake," a district court to have "equivalent duties when initially sentencing a defendant and when later modifying the sentence," the Fifth Circuit has concluded "[f]lexibility and discretion from rigid rules is particularly applicable when there is a motion to modify a sentence." *Ward*, 11 F.4th at 361 (discussing *Chavez-Meza v. United States*, 138 S. Ct. 1959, 1965 (2018)).

Significantly, Judge Engelhardt determined at sentencing the § 3553(a) factors dictated the current sentence, regardless of Count 1's mandatory term of life imprisonment: "The Court would also impose that sentence in the alternative under [18 U.S.C.] Section 3553 but for the two prior felony convictions." Rec. Doc. 345 at 34. This statement was prefaced by Judge Engelhardt's discussion of the same sentencing exposure Bolton would face today without the predicate offense enhancements: "[I]f you had not been convicted of any prior drug felony convictions, a term of imprisonment of at least 10 years but not more than life would apply." *Id.* at 27.

In clear candor, Bolton acknowledges Judge Engelhardt's sentencing statements. Rec. Doc. 497 at 2. His efforts to provide mitigating evidence, however, are less clear. Bolton attaches documents that show only limited course completion over the span of his incarceration. Rec. Doc. 497-2 at 6. Additionally, Bolton generally contends the increased harshness of incarceration during the COVID-19 pandemic should be weighed in sentence reduction. Rec. Doc. 497 at 7 (citing *United States vs. Amerson*, 05-301, 2023 WL 4373589 at *6 (E.D. NY July 6, 2023)). Lastly, Bolton argues he is no longer a danger to society, as "his rehabilitative efforts demonstrate a commitment to personal betterment." *Id.* at 7–8. To bolster that contention, Bolton includes letters from his daughter and another who "consider[s] him nothing less than a real father[,]" Rec. Doc. 497-3, his own letter with a plan to start a non-profit organization "Save Our Youth," Rec. Doc.

497-4, and data from the Sentencing Commission that indicates reduced recidivism for those in Bolton's age group, Rec. Doc. 497 at 8.

On the other hand, the government alone addresses Bolton's disciplinary infractions while incarcerated, including two in 2023 for the use of drugs. Rec. Doc. 512 at 29; *see also* Rec. Doc. 512-3. The government further notes "between the time Bolton turned 18 in 1983 until he was arrested for the instant offense in June 2009, Bolton committed a series of offenses that result in his being sentenced to over 26.5 years in prison." Rec. Doc. 512 at 29.

Section 3553(a) factors militate against Bolton's reduction in sentence. As considered by Judge Engelhardt at the time of sentencing, Bolton's conduct in the instant case and his criminal history combine to justify a sentence still within statutory bounds. His conduct while in prison does not change that analysis. Put together, we cannot conclude that releasing Bolton will not endanger the safety of others in the community. On § 3553(a) grounds, his motion for compassionate release must be denied.

New Orleans, Louisiana, this 3rd day of May, 2024

_____
SENIOR UNITED STATES DISTRICT JUDGE